**WO**                                                                                    SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Lockett, III,<br><br>        Plaintiff,<br><br>v.<br><br>Ramel Colclough, et al.,<br><br>        Defendants. | No. CV 17-01260-PHX-JAT (MHB)<br><br>**ORDER** |

      Plaintiff Joseph Lockett, III, who is currently confined in the Arizona State Prison Complex (ASPC)-Yuma in San Luis, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Phoenix Police Officers Ramel Colclough and David Dodd move for summary judgment. (Doc. 18.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 23), and he failed to do so.

      Because Plaintiff did not file a response, the Court will use Plaintiff's First Amended Complaint (FAC) as an affidavit in opposition to the Motion for Summary Judgment, to the extent his allegations are based on personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

The Court will grant the Motion for Summary Judgment and dismiss this action with prejudice.

**I.     Background**

In his one-count FAC, Plaintiff relevantly alleges the following facts:

In May 2016, Plaintiff and his wife got into an argument, he left his apartment at night, and his wife filed for an order of protection the following day. (Doc. 7 at 3.) The day after that, Plaintiff and his wife spoke on the phone and his wife told him that he could return home, which he did. (*Id.*) Shortly thereafter, Plaintiff was served with an order of protection, which instructed him to stay away from his wife. (*Id.*) When he discussed the order of protection with his wife, his wife told him that she got the order of protection "out of spite," that she would submit the paperwork to withdraw it, and that Plaintiff could stay at the apartment. (*Id.*)

Plaintiff contends that on July 24, 2016, he and his wife began arguing again and they argued through most of the night. (*Id.* at 3−4.) On July 25, 2016, his wife left and, without his knowledge, called the police and reported that Plaintiff was in the apartment in violation of the order of protection. (*Id.* at 4.) The police arrived at Plaintiff's apartment and told him to come outside, that they just wanted to talk to him, and that they were there because of the order of protection. (*Id.*) Plaintiff responded by telling the officers that he had not done anything wrong, he just wanted to be with his family, he lived in the apartment, and he was not coming out because nothing had happened. (*Id.*)

Plaintiff asserts that this verbal exchange continued for several hours. (*Id.*) He claims that he did not attempt to run away, attack anyone, act violently, or threaten the police or others. (*Id.* at 5−6.) He alleges that the officers never asked him if there were other occupants in the apartment or whether Plaintiff had any weapons. (*Id.* at 4.) Eventually, Defendants, without providing any warning, launched three oleoresin capsicum (OC) spray grenades into his small, two-bedroom apartment. (*Id.* at 4−5.) Although one of the grenades did not work, the other two did. (*Id.* at 5.) Plaintiff began

coughing to the point that he could not breathe. (*Id.*) Plaintiff ran out of the apartment, was arrested, and was treated by the fire department. (*Id.*)

Plaintiff claims that the amount of OC caused him instant pain, he had pain and irritation hours after being treated by the fire department, and he continues to have psychological issues and breathing problems due to the incident. (*Id.*) He contends it was "absolutely not necessary" and "very excessive" to release that amount of OC spray into a small apartment to get someone who was suspected of a misdemeanor offense to exit the apartment. (*Id.* at 5−6.) Plaintiff seeks monetary damages. (*Id.* at 7.)

On screening of the FAC under 28 U.S.C. § 1915A(a), the Court determined that, liberally construed, Plaintiff stated a Fourth Amendment excessive-use-of-force claim against Defendants and directed them to answer the claim. (Doc. 8.)

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire*, 210 F.3d at 1102-03. But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-

89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Excessive Use of Force

The use of excessive force by police officers during an arrest can violate the arrestee's Fourth Amendment right to be free from unreasonable seizures. *See White by White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). The Fourth Amendment does not prohibit the use of reasonable force. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum*, 441 F.3d at 1095; *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003). Moreover,

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Graham*, 490 U.S. at 396 (citations omitted).

The excessive-use-of-force analysis proceeds in three steps. First, the Court must assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003); *see Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). Second, it must assess the

importance of the government interests at stake by evaluating (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Miller*, 340 F.3d 959, 964; *see Graham,* 490 U.S. at 396 (internal quotations omitted). Third, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Miller*, 340 F.3d 959, 964; *see Graham*, 490 U.S. at 396 (The Court must balance the nature and quality of the intrusion against the countervailing governmental interests at stake); *Lolli*, 351 F.3d at 415.

## III. Defendants' Facts

At the relevant time of this action, Defendants were members of the Phoenix Police Department Special Assignments Unit ("SAU"). (Doc. 19 (Defs.' Statement of Facts) ¶ 1.) They were dressed in full tactical police uniforms, including ballistic helmets and tactical ballistic vests containing placards that clearly identified them as police officers. (*Id.*)

On July 25, 2016, at approximately 5:50 p.m., the SAU responded to a call to assist patrol officers with a barricaded subject—later identified as Plaintiff—at a residence at 8902 N. 19th Avenue, Apt. # 2062, Phoenix, Arizona. (*Id.* ¶ 2.) Once on the scene, the SAU Officers, including Defendants, were briefed by other Phoenix Police Officers and were provided the following information:

- Ada Nez-Lockett reported that she had an Order of Protection against Plaintiff, her husband, Joseph Lockett.
- Plaintiff entered Nez-Lockett's apartment on July 22, 2016.
- On July 23, 2016, Plaintiff threatened Nez-Lockett, pointed a hand-gun at her, and broke her cell phone during an argument.
- Plaintiff held Nez-Lockett captive against her will for several days.[1]

---

[1] Defendants' Facts and the declaration testimony on which they rely states that Defendants were informed that Plaintiff had held Nez-Locket against her will for "several days," but the evidence suggests that Plaintiff only began holding Nez-Locket captive on July 23, 2016, and Defendants arrived two days later, on July 25, 2016. (*See* Doc. 19 ¶ 3;

- A member of the Phoenix Police Department confirmed with the Maricopa County Sheriff's Office that the order of protection was valid.
- A member of the Phoenix Police Department obtained Nez-Lockett's written consent to search the apartment.
- Plaintiff was armed with a handgun.
- Plaintiff had a criminal history that involved violence; and
- Plaintiff had acted belligerently and in a hostile manner towards the patrol officers who initially responded to the location.

(*Id.* ¶ 3.)

Members of the SAU tried to speak to Plaintiff to convince him to come out of the apartment, but he refused. (*Id.* ¶ 4.) Non-Defendant SAU Officer Benjamin Wetzel was assigned as the negotiator for this incident, and after Plaintiff further barricaded himself inside one of the bedrooms inside the apartment, the SAU deployed a two-way communication device, or tactical communication unit ("TCU"), into the apartment so that Officer Wetzel could better communicate with Plaintiff. (*Id.* ¶ 5.)

During the 20 minutes Officer Wetzel attempted to communicate with Plaintiff via the TCU, Plaintiff refused to engage in a meaningful dialogue and continued to yell and use expletives, telling police to leave and that he had done nothing wrong. (*Id.* ¶ 6.)

Due to the potential for violence, the fact that Plaintiff was armed with a hand-gun, and Plaintiff's demeanor and lack of cooperation, Defendant Officers were ordered to deploy non-lethal canisters of irritant agents into and around the bedroom where Plaintiff was barricaded. (*Id.* ¶ 7.) Each Defendant deployed two canisters, one containing powdered OC, commonly called "pepper spray," and the other containing powdered 2-chlorobenzalmalononitrle ("CS"), commonly called "tear gas," both of which substances become aerosolized upon contact with a hard surface. (*Id.* ¶ 8.)

---

Doc. 20 (Colclough Decl.) ¶ 5; Doc. 21 (Dodd Decl.) ¶ 5.) It is not clear on the facts Defendants present what days the "several days" period included.

1         Defendant Colclough deployed his cannisters against the doorframe to the bedroom, and Defendant Dodd deployed his cannisters through the bedroom window into the bedroom. (*Id.* ¶ 9.) Approximately four minutes after the cannisters were deployed and worked as expected, Plaintiff exited the bedroom and was taken into custody by police without further incident. (*Id.* ¶ 10.) No police officers or bystanders were hurt, and Plaintiff was subjected only to non-lethal temporary irritants. (*Id.* ¶ 11.)

        On August 1, 2018, in the course of this litigation, Defendants served Plaintiff with discovery requests, including the following requests for admission:

- Plaintiff was served the order of protection preventing him from being present at the apartment on the day of his arrest.
- The order of protection was valid and in effect at the time of Plaintiff's arrest.
- One or more police officers attempted to communicate with Plaintiff before any force was used.
- Plaintiff refused demands to voluntarily leave the apartment before any force was used.
- Plaintiff was warned before the OC agents were deployed; and
- The force used on Plaintiff was reasonable.

(*Id.* ¶ 13.) Plaintiff did not object to the requests for admission or request additional time to respond, and he did not respond to the requests. (*Id.*)

**IV. Discussion**

        Defendants argue that their use of force against Plaintiff was objectively reasonable under the circumstances and therefore did not constitute a Fourth Amendment violation. (Doc. 18 at 7−11.) They further argue that, even if the force they employed was excessive, they are entitled to qualified immunity. (*Id.* at 11−13.)

        **A. Type and Amount of Force**

        As to the type and amount of force used, the Ninth Circuit has found that the use of pepper spray constitutes "intermediate force" because, although non-lethal, it is designed to cause intense pain and is therefore "a significant intrusion" that must never be used

simply to intimidate or retaliate. *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011). Taking Plaintiff's facts as true, Plaintiff suffered "instant . . . and long[-]lasting pain, discomfort, and irritation even hours after" being treated on the scene. (Doc. 7 at 5.)[2] Thus, the amount of force used to apprehend Plaintiff was significant.

### B. The Need for Force

As to the need for force, the severity of the crime for which Plaintiff was arrested supports Defendants use of some force. The undisputed facts show that the SAU had been called to Plaintiff's apartment to assist patrol officers with a barricaded subject, and when the SAU—including Defendants—arrived, they were informed that Plaintiff was armed; had a criminal history that included violent actions; had previously threatened his wife with a hand-gun, held her against her will, and broken her cell phone; and was in the apartment in violation of a valid order of protection that had been served on him and was in effect at the time, making Plaintiff's refusal to leave a violation of law. Defendants were entitled to rely on this information when assessing the need for force. *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) ("law enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers"). Additionally, "[t]he government has an undeniable legitimate interest in apprehending criminal suspects." *Miller*, 340 F.3d at 964 (internal citation omitted).

Similarly, as to the threat Plaintiff posed to officers or others, Defendants' knowledge that Plaintiff had a hand-gun and had previously committed violent acts, and Plaintiff's reported belligerence and his continued refusal to come out or cooperate with police could have led a reasonable officer on the scene to conclude that Plaintiff posed a

---

[2] Plaintiff also alleges in the FAC that he continues to suffer from breathing problems, including difficulty breathing, catching his breath, and wheezing. (Doc. 7 at 3.) Absent additional facts or medical evidence to support that these issues are tied to Defendants' use of OC and OS gas, however, these assertions are too general and medically unsupported to create a genuine issue of material fact that Defendants' actions caused these injuries.

serious threat, requiring some measure of force to subdue and restrain him. These facts also support that Plaintiff was resisting arrest and further show that Defendants had a strong government interest in apprehending him.

### C. Whether the Force Used was Reasonable

Considering the strong government interests at stake in apprehending Plaintiff under the circumstances known to the police officers at the time, Defendants' use of intermediate force was reasonable. As Defendants argue, the use of OC/CS cannisters allowed Defendants to deploy non-lethal force that subdued Plaintiff and permitted police to arrest him without putting police officers and Plaintiff in a direct or close combat situation. *C.f. Marquez v. City of Phoenix*, 693 F.3d 1167, 1171 (9th Cir. 2012), *as amended on denial of reh'g* (Oct. 4, 2012) (officers who charged into closed room with a suspect had difficulty using a Taser in the compact space, were kicked in the groin and thighs, wrestled with the suspect for three minutes, and were themselves hit by the Taser before the suspect was subdued). Although chemical agents such as OC and OS are "designed to cause intense pain," *Young*, 655 F.3d at 1161 (internal quotation marks and citation omitted), there is no evidence Defendants deployed the OC/OS canisters vindictively for this purpose (*id.*); rather, the evidence shows they attempted to persuade Plaintiff to exit the apartment and then the bedroom inside the apartment through dialogue, including by installing a communications device whereby a negotiator conversed with Plaintiff to no avail for 20 minutes, and only deployed chemical irritants when these lesser uses of force/persuasion proved ineffective. Under the totality of the circumstances confronting Defendants at the time, this use of intermediate force was reasonable. *See Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir. 1994) ("Police officers . . . are not required to use the least intrusive degree of force possible"; instead, "the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene.")

Turning from this showing, Plaintiff's allegations in the FAC fail to raise a genuine issue of material fact that Defendants' use of force was excessive. Plaintiff acknowledges

1 that the officers told him they were there for an order of protection violation and told him
2 to come out, and he estimates they engaged in "several hours" of conversation in which he
3 refused to leave before they deployed the OC/OS cannisters. (Doc. 7 at 4.) At most,
4 Plaintiff's version of events raises an issue of fact as to whether Defendants gave a warning
5 before they used chemical agents. (*Id.* at 4−5.) Construing the disputed facts in Plaintiff's
6 favor that they failed to do so, this does not create a genuine issue of material fact that they
7 acted unreasonably after Plaintiff consistently refused to comply with their commands. In
8 short, Plaintiff's version of events does not create a genuine issue of material fact that
9 Defendants acted unreasonably when, after making concerted verbal attempts to get
10 Plaintiff to come out, they deployed CO/CS cannisters as a means to effectuate his arrest
11 and removal from the apartment, even if they failed to warn Plaintiff immediately before
12 doing so. Plaintiff also fails to set forth any non-conclusory facts about his alleged injuries
13 from which to infer that the amount and type of CO/CS gas used was unreasonable.

14 In summary, because Defendants have produced sufficient evidence to show that Defendants' use of force was reasonable under the circumstances, and Plaintiff fails to create a genuine issue of material fact that the force used was excessive, summary judgment is appropriate.[3] Accordingly, the Court will grant summary judgment to Defendants and dismiss this action with prejudice.

19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

---

[3] Because the Court finds that Plaintiff cannot show a constitutional violation, it need not discuss Defendants' qualified immunity argument.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 18).

(2) Defendants' Motion for Summary Judgment (Doc. 18) is **granted**, and the action is **terminated** with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 20th day of March, 2019.

James A. Teilborg
Senior United States District Judge